## Case No. 2,721.

### The CIRCASSIAN.

[1 Ben. 128.] [1]

District Court, E. D. New York. 1866, 1867.

CONFLICT OF JURISDICTION—MARSHAL'S RETURN —VOID WARRANTS—ACTUAL CUSTODY BY OFFICER—INTERVENTION BY SHERIFF CLAIMING POSSESSION.

1. A vessel was seized by a state sheriff under a state lien law. Afterward, process was issued against her in the United States district court, in a suit on a bottomry bond. The proceedings in the state court having gone to a sale, the purchaser, who had paid twenty per cent. of the purchase money, but had not completed the purchase, applied to the district court for an order directing the marshal to surrender the vessel to him, *Held*, that the purchaser was not in a position to ask such an order, having bought her with full knowledge of the admiralty proceedings, not having completed his purchase, and not averring that the sheriff could not or would not put him in possession on his completing the purchase.

2. The question whether the custody by a sheriff of a vessel under a writ alleged to be void. is such as to prevent a court of admiralty from acquiring jurisdiction of the vessel, is one which should not be determined on motion.

3. Cases of Taylor v. Carryl, 20 How. [61 U. S.] 583, and of The General Smith, 4 Wheat. [17 U. S.] 438, commented upon.

4. Where a marshal who had process against a vessel. made return that he had attached her, but that previous to his attachment she was in custody of a state sheriff. and where it appeared that, of the warrants under which the sheriff held the vessel. all that were in his hands at the time of the alleged attachment by the marshal were afterwards declared void for want of jurisdiction. and the libellant thereupon applied for an order to compel the marshal to amend his return by striking out all reference to the custody of the sheriff, *Held*, that the marshal is responsible for the execution of the process put into his hands, and should be left

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

free to state what he does with it, subject to that responsibility, and that the court therefore would not interfere.

5. Where a question arose between the marshals of the southern and eastern districts of New York, as to which made the first seizure of a vessel in waters over which both district courts exercise concurrent jurisdiction, and on a petition by one marshal to the court to have the other give up the custody of the vessel to him, the court heard evidence as to which seizure was prior, *Held*, that such a question was more properly raised on a petition by the marshal, than on a plea to the jurisdiction by a party in whose favor the marshal held process.

6. As long as one court of competent jurisdiction has custody of property, no other court of concurrent jurisdiction can acquire jurisdiction of it.

7. The custody of the law, having been once fixed by the valid levy of an officer duly authorized to seize, continues whether the officer be present or not, unless acts equivalent to a surrender and withdrawal are shown.

8. On the facts, the petitioning marshal did not have the prior seizure. A marshal's return stating a seizure of the vessel, but that at that time the vessel was in custody of a state sheriff, does not imply any such seizure as would make the marshal responsible, or would give the court jurisdiction.

9. Where a libel was filed on a bottomry bond, on which process was issued and returned, and on the return a state sheriff filed a claim and answer, setting up that he was in custody of the vessel at the time of the alleged seizure by the marshal, and the libellant moved to strike out the claim, *Held*, that the power of the sheriff to bring, in this way, proceedings in a state court, before a United States court for adjudication as to their validity, is doubtful.

10. Where a conflict of this sort arises between a sheriff and a marshal, the sheriff has two courses open to him, either to apply to the state court to be protected, or to apply by petition to the federal court to order its officer to withdraw. The sheriff's answer stricken out, and leave given him to apply by petition.

In admiralty. On the 21st of September, 1866, the steamship Circassian returned to the port of New York, from a voyage to Antwerp. Previous to her departure from New York, she had been owned by William Salem of that city, who had mortgaged her to Ernest Fiedler, for $90,000, and had subsequently conveyed the title, subject to the mortgage, to the Continental Mail Steamship Company. When she sailed on that voyage, there were bills against her for supplies, &c., for which specifications of lien had been filed against her under the lien law of the state of New York. Sess. Laws 1862, p. 956. While she was in Antwerp, a bottomry bond was executed by her master to Jonathan R. Bischoffsheim. In Halifax, on her return home, another bottomry bond was executed to Edward Cunard. Before she returned to New York her owners had become insolvent, and on the day of her arrival she was seized by the sheriff of the city and county of New York, under a warrant issuing out of the supreme court of the state of New York, to enforce a claim of Benner & Burr, who had filed specifications of lien as above stated. Similar attachments were afterward issued to the sheriff, as follows: September 24th,

in favor of Alex. Irwin. September 28th, in favor of Zeno Secor. October 9th, in favor of James Shaw. October 10th, Horatio G. Seeber. Several other attachments were afterwards issued, but need not be specified. On October 30th, the sheriff made a sale of the vessel under the warrant in favor of Benner & Burr, and Appleton Sturgis became the purchaser at the sale, and paid twenty per cent. of the purchase money. He, however, declined to complete his purchase, and, on his motion, the supreme court on November 8, 1866, set aside the sale for want of jurisdiction to issue the warrant (the affidavit on which that warrant was issued not complying with the requirements of the statute), and ordered the twenty per cent. to be refunded. The affidavits on which were issued the warrants in favor of Irwin, Secor, and Shaw, contained similar defects. On November 23, 1866, the sheriff made another sale under the Seeber warrant, and Sturgis again became the purchaser, and paid twenty per cent. of the purchase money, but never completed the purchase. During this time, proceedings against the vessel had been taken in the United States district courts of both the southern and eastern districts, the vessel lying in the waters of the city of New York, which are by statute within the jurisdiction of both those courts. 13 Stat. 438.

The proceedings in the southern district were as follows: On September 25th, Bischoffsheim filed his libel in the southern district to enforce his bottomry bond. Process against the vessel was issued to the marshal of that district on that day, returnable on October 16th. On October 2d, Cunard filed his libel in the southern district to enforce his bottomry bond. Another libel was also filed the same day, and process was issued to the marshal on that day on both libels. On October 16th, the marshal returned the process in the Bischoffsheim case, with the following return: "In obedience to the within monition, I attached the steamship or vessel called the Circassian, her tackle, &c., therein described, on the 25th day of September, 1866, and have not given due notice to all persons claiming the same that this court will, on the 16th day of October inst. (if that should be a day of jurisdiction: if not, on the next day of jurisdiction thereafter), proceed to the trial and condemnation thereof, should no claim be interposed for the same. Previous to my attachment the vessel was in custody of the sheriff of the city and county of New York, under various attachments issued out of the state court. Robert Murray, United States Marshal." This return being made, proceedings in the cause were postponed from time to time. The returns to the other processes were subsequently made in similar form, differing only in the dates of the service, and proceedings on these processes were also postponed. On November 18th, by order of the court, the marshal made a special return of his proceedings in all the suits, which

was similar in form to the other returns, but which fixed October 2d as the day of the service of the Bischoffsheim process. On November 20th, an alias process was issued in the Bischoffsheim case, and a return was made of its service on the same day, the return being otherwise similar to the one given above. In this position of the matter, Sturgis, who, as above stated, had purchased the vessel at the sheriff's sale on November 23d, presented to the district court of the southern district a petition setting forth the proceedings under the state law, and that, by virtue thereof, the sheriff seized this vessel on the 21st day of September, and continued in possession up to the sale to the petitioner; that the marshal of the southern district claimed also to have taken possession of the vessel under the admiralty process in these causes, and claimed to have said vessel in custody, or to be entitled to the custody thereof; also, that the petitioner was ready to pay the balance of his bid to the sheriff, and was advised and believed that the sale by the sheriff passed to him a valid title to the vessel, free from all claims; wherefore he prayed that the vessel might be discharged from the custody of the marshal, and that the marshal might, by an order of this court, to be entered in these causes, be directed to surrender the possession of the vessel to him.

T. E. Stillman and Wm. Allen Butler, who appeared in support of the motion, argued that the case of Taylor v. Carryl [supra] had settled the law, that where a sheriff had possession of a vessel under a warrant from a state court, a United States marshal could not execute any process against her, and that the marshal's own return here showed that the sheriff was in such possession when the marshal undertook to attach, and that, therefore, the marshal never did or could attach, and should be directed by this court not to keep up the semblance of an attachment upon the vessel.

In opposition to the motion, J. Larocque, after arguing that the Irwin warrant, issued September 24th, under which the sheriff claimed to have been in possession on the 25th of September, when the process was issued to the marshal, was void for defect in the affidavit on which it was granted, argued the following points:

1. It has been held, that it is the right and duty of the court of the United States to enforce its possession when it is prior, as against a state officer. Slocum v. Mayberry, 2 Wheat. [15 U. S.] 1.

2. The warrant being void, it follows, that when the vessel was attached and seized by the marshal under the process in this action on the 25th September, the sheriff was not in possession qua sheriff, and held no legal or valid process. His presence was, therefore, no more an obstacle to the taking possession by the marshal than that of any other individual could have been.

3. The present, moreover, is not an applica-

tion by the sheriff complaining of interference by the marshal. It is a petition of Appleton Sturgis claiming to be a purchaser, not under process issued prior to the attachment by the marshal in this suit, but under process confessedly issued only on the 10th of October. The petitioner makes the effort to tack the possession under this warrant of the 10th October, subsequent to the attachment by the marshal under the process in this action, to a prior alleged possession under other warrants. This he could not do even if those prior warrants were valid.

4. Mr. Sturgis, moreover, has become the purchaser under the sheriff's sale, and has not yet completed his purchase. He comes to the court in advance of doing so to obtain from it a judicial declaration by order that the marshal was not lawfully in possession before the right to take possession accrued to the sheriff under the warrant under which he purchased, for the purpose of concluding the libellant here on the question of jurisdiction in this suit. He has not even a standing in court for such an application. He is not owner of the vessel, and could not appear even to claim her in the ordinary way. Rule 26 of the supreme court in admiralty.

5. If, therefore, the court is satisfied that the marshal has the lawful possession of the vessel under the process in this suit, it is its duty so to declare and to enforce it. In any event, however, there is no state of facts shown which prevents the sheriff claiming to be in possession from delivering his bill of sale to the petitioner, and doing every formal act necessary to the delivery of possession. If in law the marshal is not in possession or entitled to possession on the facts shown, his process remains in abeyance until the possession of the sheriff has ceased. The return of that process on the 16th of October, stating that before he attached on the 25th of September the sheriff was in possession, does not interfere with the lawfulness of his possession from the time of the original attachment which he returns upon the facts now shown; and this case differs from those of Taylor v. Carryl, 20 How. [61 U. S.] 583; Freeman v. Howe, 24 How. [65 U. S.] 450; and Buck v. Colbath, 3 Wall. [70 U. S.] 334, in the essential particular that here has been no attempt as in those cases to proceed to adjudication in rem before the property shall be in the undisputed possession of the marshal of this court, and thus clearly under its jurisdiction.

6. This being an admiralty suit in rem to enforce the lien of a bottomry bond upon the vessel given by the master in a foreign country, the jurisdiction in admiralty under the constitution and laws of the United States is exclusive. The distinction between cases where it is exclusive of, and where it is concurrent with that of the state courts, is that it is exclusive where that of the British court of admiralty was so at the time of the Revolution, and concurrent in cases where the courts at Westminster exercised concurrent

jurisdiction at that time; and at that time they did, and both in that country and this they have ever since exercised exclusive jurisdiction of an action in rem to enforce the lien of a bottomry bond. It is not material to inquire whether a court of common law has or has not concurrent jurisdiction of an action in personam against the owner or master of a vessel on a bottomry bond for subtraction of the security, or after it has become absolute and when there is a personal covenant to pay. Const. U. S. art. 3, § 2; Judiciary Act, § 9 (1 Stat. 76); 1 Pet. Adm. 91, 92, 93 [Brevoor v. The Fair American, Case No. 1,847]; [American Ins. Co. v. 356 Bales of Cotton] 1 Pet. [26 U. S.] 545; The Volunteer [Case No. 16,991]; 16 Johns. 327; 1 Wheat. 304, 335; 1 Kent, Comm. 318, 319; 18 Johns. 392; Doug. 594; Menetone v. Gibbons, 3 Term R. 267; Ladbroke v. Crickett, 2 Term R. 649; Buggin v. Bennett, 4 Burrows, 2035; Blacquiere v. Hawkins, Doug. 378.

7. If, however, the state courts could exercise concurrent jurisdiction, the jurisdiction in this court has already attached by the filing of the libel to enforce the bottomry bond. Even if the libellant might have availed himself of the provisions of the act of the legislature of New York of April 24, 1862, entitled "An act to provide for the collection of demands against ships and vessels" (Sess. Laws 1862, c. 482), he has not chosen to do so. That act, whenever any lienholder under the state law originates proceedings, assumes to foreclose by those proceedings and to cut off, in favor of the claims of citizens of New York against the vessel arising in this state, whether prior or subsequent, every other lienholder having a claim, whether of exclusive admiralty jurisdiction, or concurrent admiralty jurisdiction, except seamen having claims for wages. Section 1, subd. 5. The act in this respect is a plain infringement of the jurisdiction of the federal courts in cases of admiralty conferred by the constitution of the United States, and void. It is to the suitor in admiralty that the United States judiciary act saves a "common law remedy in all cases where the common law is competent to give it"—not to the defendant or respondent. It is the suitor who is entitled to exercise the option as to the forum, where one exists. With that single saving, the jurisdiction of the admiralty is expressly made exclusive of the state courts. And even that saving is fully satisfied by the construction that the common law remedy must be sought in the federal court and not in the state court, and full effect cannot be given to all the language of the section by adopting any other construction. U. S. Judiciary Act, § 9; 1 Stat. 76.

8. The present motion, moreover, under color of that act of the legislature of New York, undertakes to deprive this libellant, who is an alien, of his right of proceeding in the federal court against a domestic ship owned by citizens of New York, and claims to abrogate the plain language and import of the contract of bottomry executed in the foreign port of Antwerp.

9. The state law also seeks to reverse the well-established rule of the general maritime law of the world, that a bottomry bond is entitled to a priority in payment over every other claim against the ship, and successive bottomry bonds in the inverse order of their dates and of the exigencies calling for them, the last given being entitled to be first paid. This state law postpones them all to claims of its own citizens under liens acquired prior or subsequently, in the ship's home port, as against a foreigner acquiring a lien in good faith in a foreign port, and in reliance upon the general maritime law adopted expressly by the constitution, laws, and decisions of the courts of the Union, but attempted to be set aside by this state enactment.

10. The court will, moreover, not pass upon such a question adversely to the libellant on motion. It would be in effect deciding against him a jurisdictional question involving that of the continuance of his lien under the bottomry bond, in a form which would deprive him of his right to appeal to the supreme court of the United States. The petitioner should be left to set it up by claim and answer in this suit. The prayer of the petitioner should therefore be denied with costs, and the order should declare that the marshal has possession of the vessel under the process in this action in law and in fact.

In behalf of Cunard, the other bottomry bondholder, G. D. Lord, also presented a brief, but cited no other authorities than those cited above.

[Dec. 24, 1866.]

BENEDICT, District Judge. I fully appreciate the unfortunate position of this steamer, and have considered with care the reasons which are urged in support of this petition. The impressions formed upon the argument are, however, confirmed, and I am satisfied that the motion should be denied. In the first place, the petitioner is not in a position to entitle him to ask such an interference of this court. He is simply a bidder at the sheriff's sale, who has not yet completed his bid. He bid off the vessel with full knowledge of the admiralty proceedings against her. He avers in his petition that he is advised and believes that if he completes his purchase he will receive a valid title to the vessel. He does not aver that the sheriff is unable or unwilling to put him in possession on receipt of the balance of the purchase money. It is not seen how a party so situated can ask this court to direct the marshal to surrender to him the possession of the vessel. If the action of the marshal had been such as improperly to delay or embarrass the proceedings before the state officers, the state court was competent to protect its officer and its custody of the vessel, if such it claimed to have; and the

sheriff in such case might perhaps with propriety have applied to this court to restrain any unlawful action of the marshal. It might also be that the owners or creditors of the vessel could have applied to forbid action, on the part of the marshal, which was likely to prevent realizing a full price from the sheriff's sale. But since the service of the process by the marshal, proceedings in admiralty have been stayed; the proceedings under the state law have gone on: the vessel has been sold by order of the state officer, and for aught that appears, for a full price, under notice of all that has been done or is claimed in the admiralty causes. Neither the sheriff, nor the owners, nor the creditors, complain of any improper exercise of the powers of the officer of this court. How, then, can the petitioner, who has suffered no injury, and may never have any interest in the vessel, ask this court to interfere in his behalf?

There is another reason for denying this application, which is, that it raises a question which should not be adjudicated upon a motion. That question is, whether the custody of the sheriff, by virtue of the statute, is sufficient to prevent the court of admiralty from acquiring jurisdiction for any purpose during the custody of the sheriff, although the officer issuing the warrant to the sheriff had failed to acquire jurisdiction, and the proceedings before him were void. Such is claimed to be the nature of the sheriff's custody in this case; and it appears that the first proceeding taken before the state officer has been declared void by the state tribunal; that the second contains the same defect, and that the third and only other proceeding, previous to the marshal's attachment, is open to objections which may prove equally fatal. It is also to be noticed that the order of sale made by the state officer, under which the petitioner claims, was not made in either of the proceedings commenced before the marshal's attachment, and that it recites that the sheriff seized the vessel on October 10th, which was subsequent to the marshal's attachment.

Now, I do not decide that the proceedings in the state tribunal are void for want of jurisdiction; nor do I examine those proceedings further than to see that the objections taken to the jurisdiction are not frivolous, but simply determine that such a question as this petition raises, and on which the rights of these bottomry holders depend, if the theory of the petition be sound, should not be disposed of in a summary manner, on a motion which cannot be reviewed on appeal.

If there was no ground to contend that the case raised any other question than the one decided in the case of Taylor v. Carryl, 20 How. [61 U. S.] 583, on which the petitioner relies, it might, perhaps, be the duty of the court to end the controversy now. But the case is not identical with the case of Taylor v. Carryl. In that case, the prior custody was the custody of the superior court of the state, whose jurisdiction was conceded. The question was one of title, and what the court decided was, that a title derived from the sale of the vessel, as perishable, by a superior court of the state in a valid proceeding, made after the marshal had retired, and when the custody of the state court had been actual and continued, was a better title than one dependent on the marshal's seizure in the admiralty proceeding.

It may be, that for the same considerations which influenced the high tribunal which decided Taylor v. Carryl, it must also be held in this case that the custody of any state officer, whether acting with or without jurisdiction, is sufficient to oust the jurisdiction of the admiralty, even in an action like the present, where its jurisdiction is exclusive. But in the absence of any such decision by the supreme court, and in view of the effect of such a decision in cases of prize, in cases under the revenue and neutrality laws, and in this case, where the result, claimed by the petitioner to follow, would be to supersede the bottomry bonds by the prior state liens, and in effect destroy them, I do not feel bound so to decide on a motion like this, and enforce the decision by a final order directing the marshal to surrender possession to the petitioner.

So far this application has been treated as an application for the interposition of the court to avoid a conflict between federal and state authority; but it is not quite clear that the petition presents a case of conflicting jurisdictions. The averment of the petitioner is, that the proceedings before the state officer have gone to a sale of the vessel to him, and that the sheriff continued in possession, from his first seizure "up to the sale to the petitioner." There is no definite averment of any custody by the sheriff since the sale, and the prayer is, that the marshal deliver the vessel, not to the sheriff, but to the petitioner. It would not be a very strained construction of this petition, which is certainly ambiguous, to hold that it showed no conflict between the marshal and the sheriff, but that the controversy now lay between the bondholders and the buyer at the sheriff's sale. If such be the nature of the controversy, no reason is discovered for determining it by a summary order like the one prayed for.

In dismissing this application, I venture to add to these remarks a single observation, in the hope that the attention of the appellate court, before which this case will doubtless come, may be called to it.

The source whence such conflicts as the present, in regard to liens upon ships arise, is the distinction between foreign and domestic vessels, laid down in 1816 in the case of The General Smith. 4 Wheat. [17 U. S.] 438. It is that decision, long considered by

many able lawyers to be without solid foundation, which compels resort to state lien laws, and gives birth to statutes like the one here involved—a statute which assumes to foreclose and cut off by proceedings in the state court all other lien creditors except seamen, including those having claims of exclusive admiralty jurisdiction—a statute which creates a sort of state admiralty, liable at all times to be brought in conflict with the national courts, to which the admiralty and maritime jurisdiction has been intrusted under the constitution—of which statute I speak the more fully, as many of its features originated with me, when acting as a member of the legislature which passed it. Such laws are now deemed necessary to obviate the consequences of the decision in the case of The General Smith, but they would seldom or never be resorted to if the distinction of The General Smith could be reconsidered, and it be held that, "it is the ship, and not the ship of a particular owner, nor the ship of a particular flag, or national character; not a domestic ship, nor a foreign ship; not a ship in a port of a state to which she does not belong, or in which her owner does not reside; but a ship, every ship, that is bound for the bill of lading, the charter party, the wages of the seamen, repairs, supplies, materials, and maritime loans."

Application denied.

After this petition of Sturgis was thus disposed of, Bischoffsheim applied to the district court of the southern district for an order directing the marshal to amend the return in his action by striking out of it all reference to the prior attachment by the sheriff. This application was based on affidavits to show that the warrants held by the sheriff on September 25th, the day when the process was served by the marshal, were void for want of jurisdiction.

J. Larocque appeared in support of the motion, which was opposed, in behalf of the parties who held the state attachments, by W. R. Beebe, R. D. Benedict, and Wm. Allen Butler.

[Jan., 1867.]

SHIPMAN, District Judge. I have given the questions involved in this motion, and those with which they are necessarily and directly connected, an extended and a careful consideration, and am of opinion that this motion, so far as it calls upon the court to direct the marshal to amend his return to the process, should be denied. There are serious and almost unsurmountable objections to the court's dictating to the marshal what return he should make in any given case touching the facts to which the return properly relates. The marshal and not the court "is responsible for the execution of this process, and he should be left free to state what he does in the premises subject to his responsibility to the law under which he acts. These remarks refer to the material facts touching an officer's action, and not to the mere form of the return. In the case of Wortman v. Conyngham [Case No. 18,056], Mr. Justice Washington, after argument of a rule to show cause, took the same view even as to a return on an execution. Much more should it apply to mesne process. If the marshal desires to amend his return, he will be permitted to do so, the court reserving all questions as to law or fact which may arise in the further progress of the cause.

Motion denied.

After the above motion, no further proceedings were taken in the southern district, the activity of the litigation being transferred to the eastern district.

The proceedings before the district court of the eastern district were as follows:

On the 27th day of September, two days after the filing of the first libel in the southern district, a libel was filed by C. K. Porter and others, seamen on board, to recover wages, and process in rem was issued. Thereafter three other libels, also for wages, were filed, the claims in all amounting to some $6,000. To the first of these processes the marshal made return that he had seized the vessel on the 27th of September, and given due notice to all parties to appear; and to the others a like return, except as to date. The return made no reference to any possession by the sheriff or the marshal of the southern district, and the marshal claimed that there was no such possession at the time of the service of this process. No one appearing to contest these claims, decrees were in due course entered by default, condemning the vessel. Subsequently, on application of Edward Cunard, who had filed the second libel in the southern district, and also on application of Ernest Fiedler, the mortgagee of the vessel, the defaults were opened, and, claims and answers being duly filed, the causes were placed on the calendar, and thereafter called in their order for hearing, when it was suggested that this court had no jurisdiction of the vessel for the reason that on the 27th of September, when the process of this court was served, the vessel was in the custody of the marshal of the southern district. Upon this suggestion, the hearing of the causes was postponed, and leave given to raise the question suggested by proper averment, and a day set for its determination. The leave thus given was never availed of, and the causes subsequently proceeded to trial on their merits, without objection, and after consideration decrees were rendered in favor of the libellants, according to which a venditioni exponas was issued to the marshal, and the vessel advertised to be sold at the foot of Joralemon street, Brooklyn, where she then lay. In none of these actions in either court did any owner appear to claim the vessel. It was always insisted by the

libellants in this court, and by the marshal of the eastern district, that after the 27th day of September the vessel was always in his manual possession and under his actual control. Matters being in this position, after the denial of the motion to compel the marshal of the southern district to amend his return, an application was made to this court, on behalf of Bischoffsheim, to open the default in the seamen's wages suit, and to allow him to file a plea to the jurisdiction of the court, he claiming that this court never acquired any jurisdiction, because at the time of the alleged seizure by the marshal of this district the vessel was in custody of the marshal of the southern district. The court intimated that such a question would more properly be brought up by an application in behalf of the marshal of the southern district to remove the marshal of the eastern district. Accordingly the marshal of the southern district filed a petition, stating that he attached the vessel on September 25th, and had been interfered with by the marshal of the eastern district, and praying this court to have the "priorities of the respective attachments and of the jurisdictions of the courts of the respective districts investigated and determined by this court." Notice of hearing on this petition was ordered to be given to the libellants in this court, and the hearing was brought on before the court.

Mr. Larocque appeared for Mr. Bischoffsheim and for the marshal of the southern district.

Mr. Vanderpoel appeared for the sheriff of New York, and said that he had just heard of the proceeding, of which he had had no notice, and if the sheriff was to be prejudiced by it he should wish to be heard in the matter. It was stated, however, that the sheriff would not be affected by this proceeding, which was to affect the two marshals only, and Mr. Vanderpoel withdrew.

In support of the petition, Mr. Larocque put in evidence the libel of Mr. Bischoffsheim in the southern district and the process issued on it, on the 25th of September, with the return of the marshal of the southern district upon it, that he had on that day attached the vessel, and that previous to his attachment the vessel was in the custody of the sheriff of New York.

Mr. Hill, who appeared for the libellants, put in evidence the special return made by the marshal of the southern district in all the cases in that district, in which he returned that he attached her on the 2d of October, and previous to his attachment she was in custody of the sheriff, &c.; and the alias process issued in the Bischoffsheim case, with the marshal's return on it, that he had attached the vessel on the 20th of November, and previous, &c.

Mr. Larocque then put in evidence the proceedings in the state attachments, and rested.

Mr. Hill also rested.

Mr. Larocque then insisted that the court in this state of the case, must decide that the marshal of the southern district had the custody; that he had returned that he had it, and an officer's return was conclusive. He added that he had understood that evidence was to be given that no one was on board the vessel at the time the marshal of the eastern district made his arrest of her, and he had come with witnesses to give testimony on that point; but none had been given on the other side, and he supposed the court would at once pass on the case without his calling them.

The judge said he should pass on the case on the evidence which parties put in, but they must themselves decide as to what evidence to put in, and he should give it due consideration, as it was a matter of importance.

Mr. Larocque then asked leave to introduce further evidence, which was granted.

Witnesses were then called on both sides as to the facts of the service of the process by the marshal of the southern district. Their testimony is sufficiently detailed in the following opinion delivered by the court, in disposing of the petition.

BENEDICT, District Judge. Controversies like the present cannot always be avoided in a port where three sheriffs of three different counties, and two marshals of two different districts, to say nothing of other officers, have concurrent jurisdiction to make seizures on its waters. Of this class was the late case of the ship Ferdinand, cited on the hearing, where all the three sheriffs claimed to have the simultaneous custody of the vessel; and somewhat similar was the older case of the Alida, before Judge Betts, where the controversy was between the marshal, a sheriff, and a receiver.

This case differs, however, from most others in this important feature, that the rights and priorities of the various parties proceeding in admiralty, as between themselves, will not be affected by a determination of the question of the priority of seizure. This is because the character of the demands determines the order of payment, in whichever court the vessel may be sold and the proceeds distributed.

The application now made, therefore, does not look to a determination of any question of priority in payment, but rather seeks a determination of the question which of the two courts has legal custody of the vessel, and can make a valid decree of sale.

This question I much preferred to have raised and decided in the southern district, where the first libel was filed, but as more than ample time and opportunity have been given for its examination there, and as it is now distinctly raised here by the marshal of that district, I do not hesitate to examine and dispose of it.

As to the general principle of law which is applicable to this case, no question can arise; for it is settled that so long as one court of competent jurisdiction has custody of property, no other court of concurrent jurisdiction can acquire jurisdiction thereof; and this custody of the law having been once fixed by the valid levy of an officer duly authorized to seize, continues, whether the officer be constantly present or not, unless acts equivalent to a withdrawal and surrender are shown. 2 Pars. Mar. Law, p. 523; The Julia Ann [Case No. 7,577]. As to the controlling facts of the case there can be no reasonable doubt, and they are such as to render it unnecessary to consider whether the evidence offered with a view of showing a withdrawal by the marshal of the southern district, and an acquiescence in the custody of the marshal of the eastern district, does or does not establish that fact. The undisputed facts are such as to render it only necessary to consider whether the marshal of the southern district ever made any valid levy on this steamer prior to the 27th of September, the day when the process from this court was served.

Prior to the 27th of September, the marshal of the southern district had but one process in his hands, that in the suit of Bischoffsheim. This process Bates was deputed to serve, and what he did is proved by Bates himself, and by him alone. He says that he received the process on the 25th, and on the same day, by virtue thereof, seized a wooden side-wheel steamer, with two smoke stacks, which he supposed to be the "Circassian," which, when he seized her, lay in Brooklyn, south of the Hamilton ferry, opposite the Atlantic stores. This vessel, he says, went subsequently into the Atlantic basin, where he was several times on board of her, and she then went away, but where to he does not know.

Now the Circassian is an iron vessel, a propeller, with one smoke stack. She was at no time south of the Hamilton ferry or in the Atlantic basin. On the 25th, and when seized by the marshal of the eastern district on the 27th, she was between the Hamilton and Wall Street ferries, and has there since remained. Bates resided near the Hamilton ferry, and is well acquainted with the locality of which he speaks, and is positive as to where he found the vessel which he seized, and that he was on her in the Atlantic basin. He had no other process against any steamer, and if his evidence be true, he went to the wrong vessel, and made no levy at all on the Circassian prior to the 27th of September. Moreover, Bates could not read writing, or write, and says that he received no instructions from the marshal, or any other person as to the wharf at which the Circassian lay, but went on his own knowledge, having seen her come in a day or two before, as he supposed.

The probability is that he mistook for the Circassian another steamer belonging to the same company, which it is proved did at this time lie at the Atlantic stores, and subsequently went into the basin. It is quite clear he did not visit the Circassian, for of several persons present in court at this hearing, who were on board of her on the 25th, he can identify but one, and that one declares that he saw no such man as Bates at the vessel; while the quartermaster who was at the gangway the whole of the 25th, swears that Bates was not there on that day, nor was any seizure made on that day.

To this evidence is added the circumstance that when on the 2d of October, the marshal received a second process against the Circassian, he did not depute Bates to serve it, according to the usual practice, but gave it to another deputy, and in his special return he state his first seizure of the Circassian to have been made on the 2d of October. It would seem to be difficult upon such evidence to hold that the marshal of the southern district made any seizure of this vessel prior to the 27th of September. But supposing the Circassian to have been the vessel which Bates visited on the 25th, there are still other features of this case which are decisive of the present application.

It is conceded that on the 25th of September, the sheriff of New York was on board the Circassian claiming to have her in custody. The marshal of the southern district must therefore have done one of two things, either he ignored the custody of the sheriff and took the vessel into his own custody and control, or he acknowledged the custody of the sheriff and made no seizure himself. He could not acknowledge the special property of the sheriff and at the same time take the possession and control himself. That he acknowledged the possession of the sheriff, and took no possession himself is apparent from the returns which he made to the original and alias process in the case of Bischoffsheim.

The apparent inconsistency in the phraseology of this return is doubtless owing to the use of the ordinary blank return printed on the process, in which the marshal filled the date of the supposed visit of Bates to the vessel, and to which he added in writing the statement that the vessel was found to be in the custody of the sheriff. This written portion of the return is the controlling portion, and it announces and was intended to announce that the vessel was already in the custody of the law, and that therefore the marshal could not bring her before the court for condemnation. Taken together, the return cannot, as I view it, be held to return any such seizure of this vessel as would render the marshal responsible, or would give the court jurisdiction. The fact stated in it showed a seizure to be impossible, and the statement was useless and immaterial except as an excuse for his failure to levy.

That such is the true construction of this

return is shown by the testimony of the marshal's chief clerk, Mr. Thompson, who swears that the return made in this case is the return made in all cases where the sheriff is found in custody, and I am not aware that the returns made in this form have ever been understood to import anything more than that the marshal had on a certain day presented himself at the vessel for the purpose of seizure and had been unable to make it because of the prior custody of the sheriff. Such seems to have been the construction put on the return in this case, for on its being made, an alias process was moved for and issued. Why an alias if the vessel was already in court? Why if the marshal levied on the 25th of September, did he return upon the alias that on the 20th of November the sheriff was in custody? Why in his special return say that the sheriff was in custody on the 2d of October? Why, if this return showed the vessel in court, was a motion made to compel the marshal to strike out the reference to the sheriff's custody? Why, if that portion was not material, does the marshal decline to strike it out? Why, if on such a return the court can entertain jurisdiction do the processes still lie over without action thereon, and the suits, although involving a large amount and pending five months without any defence being interposed, remain stagnant, without entry of default, time to answer, or other steps looking towards a final determination? I can conceive of but one answer, and that an obvious one. The return of the marshal showed that the court had not acquired jurisdiction of the vessel against which the suits were brought. Both the return and suspension of proceedings were in accordance with the opinion of the court in the case of The Robert Fulton [Case No. 11,890], where it was said: "If the marshal found the vessel held by the sheriff under his attachment, he should have so returned upon his process, and all further proceedings of the court would have been arrested." These considerations are, in my opinion, sufficient to remove all doubt as to the jurisdiction.

But if doubt does exist as to the jurisdiction of this court, it certainly would be neither useful nor just to the libellants here, to prevent the proposed sale, which, if the court lacks jurisdiction can injure no one, and which the libellants are urgent should be made, and of the validity of which they are willing to take the risk; thereby compelling them to resort to a tribunal where the action and return of the marshal have rendered it impossible to proceed beyond the filing of the libel. Nor is it seen that any advantage could be derived from such an order by any of the parties who have filed their libels in the southern district, but rather the contrary, inasmuch as proper proceedings on their part will enable them at once to obtain payment in this court out of the proceeds of the proposed sale, in the order of the priority to which they may be entitled, unembarrassed by the marshal's return in their present proceedings, which renders them ineffective.

A further feature of this case should be alluded to in order to explain the difference between the return of the marshal of the eastern district and that of the marshal of the southern district, and to prevent any inference that the propriety of either Marshal Murray's or Marshal Dallon's action as regards the sheriff is here called in question.

The custody of the sheriff of New York, announced by Marshal Murray as existing on the 25th of September and subsequently, was a custody, as it now appears, under two warrants issued by a judge of the supreme court of New York, in statutory proceedings against this vessel under the state lien law. One of these proceedings has been since held void for want of jurisdiction by the supreme court, and the other is claimed to be equally invalid, and all such proceedings in a state court are brought in question by the late decision of the supreme court in the case of the Moses Taylor. These warrants were however valid on their face, and the marshal of the southern district deemed it his duty to acknowledge the custody of the officer who held them. The marshal of the eastern district, on the other hand, saw fit to treat them as void, and insufficient to authorize any levy by the sheriff, or prevent a seizure by him, and he therefore took possession and assumed and has maintained control of the vessel. Whether the warrants held by the sheriff were void, and whether the marshal of the eastern district could lawfully terminate any possession which the sheriff may have had on the 27th of September, are questions not raised or disposed of here, but are properly left by the parties interested in them to be raised in such possessory action, replevin suit, or other proceedings, as may be instituted to test the validity of any title based upon the action of the marshal of this district.

What it is intended to determine here is simply the question of priority between the two marshals, and the consequent jurisdiction over the vessel. On this question my conclusion is, that the marshal of the southern district made no valid seizure of this vessel prior to the 27th of September, and that the sale of the vessel by the marshal of the eastern district under the writs held by him should be allowed to proceed. The prayer of the petition must therefore be denied.

The vessel was not, however, sold under these proceedings, the claims of the libellants being paid. The question which court had jurisdiction of the vessel being, however, thus disposed of, Bischoffsheim, before the discharge of the libellants' process, filed his libel anew in the district court of the eastern district.

Process against the vessel was issued on this libel, and the marshal made return that he had seized the vessel and given due notice

to all parties to appear and defend. Upon the return of this process, besides other claimants, the sheriff of the city and county of New York appeared as a claimant and filed a claim, averring "* * * that as sheriff he was in possession of the said steamship at the time of the alleged attachment thereof by the marshal of the eastern district of New York, and prior to any attachment of or custody of said steamship by said marshal, and was lawfully entitled to such possession under divers attachments and process issued in due form of law to said sheriff out of the supreme court of the state of New York, and thereunder he has sold the said steamship, which attachment and process said sheriff is ready to produce, wherefore he prays to defend accordingly." To this claim and appearance the libellant, Bischoffsheim, objected, and moved that the claim be stricken out.

Larocque & Barlow, for motion.
Brown, Hall & Vanderpoel, for the sheriff.

BENEDICT, District Judge. I do not conceive that this court has any power by any form of process to require an officer of a state court to submit himself, and with him the tribunal which he represents, to the jurisdiction of this court; and I greatly doubt the power of the sheriff by making himself a party to proceedings in rem in this court, as here proposed, to bring proceedings pending in a state tribunal before this court for adjudication as to their validity. It is not seen how the decree of this court, adverse to the legality of the proceedings pending in the state tribunal, should such decree be made upon the issue sought to be raised by the sheriff, could be rendered effective to stay the action of the state court, and any determination which this court might make upon such issue, would seem, therefore, to be nugatory. If, on the other hand, the sheriff can submit himself to the jurisdiction of this court, it may be doubted whether, when he has appeared in an action in rem, and made himself a party by filing a claim to the vessel, he is in a position to insist that the vessel is not in the custody of the court. The appearance and claim may amount to an acknowledgement of a seizure by the marshal, and a seizure acknowledged by the sheriff would in such case doubtless give this court jurisdiction of the property.

What is desired by the sheriff is to bring to the notice of this court the fact that the marshal of this district has undertaken to seize a vessel which was in the custody of the sheriff, as minister of the law by virtue of proceedings pending in a tribunal of the state, in order that this court may stay its hand, and allow the proceedings in the state tribunals to go on without interference. In such an emergency two ways lie open to the sheriff. He may bring the facts before the court whose officer he is, and that court has doubtless full power to protect its own custody, if such it has; or he may bring the facts before this court by petition, and pray this court to instruct its officer to withdraw from the vessel. And whenever the latter course shall be adopted, this court will always be found prompt to investigate the facts and solicitous to respect the action of the state officers, and will always avoid a conflict of authority when it is possible to do so consistently with law and justice.

This method of procedure, if followed in the cases of conflicting jurisdictions which must sometimes arise in a harbor like this, will in most instances result in a summary and final determination of the question of possession between the officers of the respective courts, and promptly relieve those officers as well as the courts themselves from many of the embarrassments which otherwise attend such controversies; or if cases arise where questions of such novelty and difficulty are found to be involved as to make a final disposition of them upon a summary petition inadvisable, it will be made apparent to both courts at the outset that a disputed jurisdiction is necessarily exercised, to prevent injustice, and not from any want of regard or respect for the action of another tribunal. My opinion, therefore, is that the claim and appearance of the sheriff should be stricken out, and leave given him to apply by petition for the relief which he desires.

NOTE [from original report]. The proceedings in the United States courts against this vessel resulted in the payment of the seamen, the settlement of one bottomry claim, and the bonding of the vessel in the Bischoffsheim Case, in the eastern district, by the mortgagee. That suit is still pending. A brief statement of what was subsequently done in the state court will be of interest. While the above proceedings were pending, the decisions of the supreme court of the United States in the cases of The Moses Taylor. 4 Wall. [71 U. S.] 411, and the Ad. Hines (not yet reported), were made, and Judge Barnard, of the supreme court of New York, had in the case of the steamboat Josephine decided that under those decisions the state courts had no jurisdiction to enforce a lien on a seagoing vessel, and that the lien law of the state was so far unconstitutional. From this decision an appeal was taken to the general term. While this appeal was pending, a motion was made in the Circassian Case, on behalf of Fiedler as assignee of Sturges, who had bought at the sheriff's sale, to set aside the sale and all the proceedings as void. On the other hand, a motion was made in behalf of parties who had warrants against her, to compel Sturges to complete his purchase and pay the purchase money. The motions were heard together before Judge Sutherland, and his decision, denying both motions, will be found reported in 50 Barb. 490. The general term of the supreme court reversed the decision in the case of The Josephine [50 Barb. 501], holding the law constitutional. An appeal was taken to the court of appeals, which reversed the decision of the general term, and affirmed Judge Barnard's decision [39 N. Y. 19]. While this appeal was pending, Fiedler, who had acquired the title to the vessel by a sale under his mortgage and an assignment from Sturges, the purchaser, having paid off the decrees in the seamen's wages cases and bonded the vessel in the other cases in the United States courts, brought an action

against the sheriff of New York to have the proceedings under the various warrants set aside and the twenty per cent. refunded, and to have the sheriff enjoined from further meddling with the vessel. He paid into court also a sum sufficient to cover the lien claims, which was by agreement to stand for the vessel, and she went to sea on the 10th day of August, 1867, having been in the custody of the law for nearly a year. In this suit by Fiedler, the sheriff set up the lien proceedings by his answer; and after the decision of the court of appeals, his answer was stricken out by the supreme court, and the money refunded to the mortgagee. The various material men, who had relied upon the lien law of the state, lost every dollar of their claims, amounting to nearly $20,000.